**ALLIS–CHALMERS CORPORATION, Petitioner,**

v.

**OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION and the Secretary of Labor, Respondents.**

No. 75–2125.

United States Court of Appeals, Seventh Circuit.

Argued April 23, 1976.

Decided July 28, 1976.*

---

* This appeal was originally decided by unreported order on July 28, 1976. See Circuit Rule 35 (formerly Circuit Rule 28). The court has subsequently decided to issue the decision as an opinion.

T. Michael Bolger, Nicholas T. Jordan, Milwaukee, Wis., for petitioner.

Sidney M. Nowell, U. S. Dept. of Labor, Washington, D. C., George F. Graf, Milwaukee, Wis., Michael H. Levin, Allen H. Sachsel, Appellate Section, Civ. Div., Dept. of Justice, Washington, D. C., for respondents.

Before CASTLE, Senior Circuit Judge, TONE, Circuit Judge, and GRANT, Senior District Judge.**

GRANT, Senior District Judge.

Allis-Chalmers petitions for a review of an Order of the Occupational Safety and Health Review Commission which reversed the decision of the Administrative Law Judge vacating Sub-Item 13(e) of the Secretary of Labor's citation of Allis-Chalmers. The citation, issued pursuant to Sec. 5(a)(2) of the Occupational Safety and Health Act of 1970 (84 Stat. 1590 *et seq.*, 29 U.S.C. § 651 *et seq.*) alleged that petitioner had violated OSH standard 29 C.F.R. 1910.-28(a)(1) by failing to provide its employees with scaffolds in areas where work could not be done safely from the ground or from solid construction. The citation resulted from an observation, made by the Secretary's safety and health compliance officer, that one of petitioner's employees was off-loading a manhole cover and some bolts from a crane while on top of a rotary kiln which was laying on its side. No scaffold was present during this operation. The Administrative Law Judge held that there was no violation of the standard. The Review Commission, however, reversed that decision, finding that the hearing Judge erred in stating the elements necessary to establish noncompliance with the standard. Petitioner thereupon filed the instant petition for review of the Commission's ruling.

In support of its position in this appeal, petitioner claims first of all that the standard under which it was cited is invalid and unenforceable because it is so vaguely worded that the company could not reasonably have foreseen its applicability. In support thereof, petitioner contends that the regulation in question fails to give fair notice to a person of ordinary intelligence that it proscribes or prescribes any given conduct. Additionally, petitioner maintains that, even if the standard were deemed valid, respondents completely failed to sustain their burden of proving that the work

performed herein could not be done safely from the ground or solid construction so as to necessitate the use of scaffolds. For these reasons, petitioner urges this Court to reverse the Commission's decision and affirm the judgment of the Administrative Law Judge.

In response, respondents maintain that the Commission's order is supported by substantial evidence and contend that the undisputed evidence showed that employees who were working on the cylindrical surfaces herein without scaffolding, ladders, or other protection against possible falls, were working under conditions which created a clear tripping hazard. Respondents assert that the proper test to be applied in this case is whether there was an objective fall danger requiring scaffold use; and that, under this test, such a danger did, in fact, exist in this case. Second, respondents reject as untenable petitioner's contention that the standard applied in this case is unconstitutionally vague. As to this argument, respondents note that the requirement is not so indefinite that men of ordinary intelligence must necessarily guess at its meaning. On the contrary, respondents say that the standard under scrutiny herein makes clear that scaffolds are required whether or not employees are working from solid construction, if the work from such surfaces cannot be done safely. Accordingly, it is concluded that reasonable men should conclude that work from the rotary kilns without fall protection was unsafe. We are urged, therefore, on the basis of the above, to deny the instant petition and affirm and enforce the Commission's order.

The pertinent portion of the standard involved in this case, which the Commission *found petitioner to have violated*, states that:

1910.28 Safety Requirements for Scaffolding

(a) General requirements for all scaffolds:

** *Senior District Judge Robert A. Grant of the United States District Court for the Northern District of Indiana is sitting by designation.*

(1) Scaffolds shall be furnished and erected in accordance with this standard for persons engaged in work that cannot be done safely from the ground or from solid construction . . . .

The first question presented is whether this standard can withhold petitioner's attack based on vagueness. The test here, of course, is whether the standard is so indefinite that men of common intelligence must necessarily guess at its meaning and differ as to its application. *Ginsberg v. New York,* 390 U.S. 629, 643, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968); *United States v. Tandaric,* 152 F.2d 3 (7th Cir. 1945). In this regard, petitioner urges this Court to view as dispositive the case of *Cape & Vineyard Div. v. Occupational S. & H. Rev. Com'n,* 512 F.2d 1148 (1st Cir. 1975), wherein the court stated at page 1152:

> A regulation without ascertainable standards . . . does not provide constitutionally adequate warning to an employer unless read to penalize only conduct unacceptable in light of the common understanding and experience of those working in the industry. *Ryder Truck Lines, Inc. v. Brennan,* 497 F.2d 230, 233 (5th Cir. 1974).

While we have no quarrel with the rationale upon which the court in *Cape & Vineyard* grounded its decision, we are persuaded that the standard sought to be enforced in the instant case does meet the minimum requirements of clarity to satisfy constitutional due process. The standard is not, to our way of thinking, and as petitioner contends, "a mishmash of confusing words and meanings." Although we can conceive of the multitude of ways in which the standard could have otherwise been worded, and although the regulation may not be a model of perfect precision, we cannot say that the regulation failed to afford petitioner a reasonable warning that scaffolding was to be utilized where work in high places could not be done safely in light of common understanding and practices. *Ryder Truck Lines, supra,* 497 F.2d at 233. Stated another way, so long as the standard herein afforded a "reasonable warning of the proscribed conduct in light of common understanding and practices, it will pass constitutional muster". *United States v. Petrillo,* 332 U.S. 1, 4, 67 S.Ct. 1533, 91 L.Ed. 1877 (1947).

Turning now to the second issue presented for our consideration—whether or not the Commission's decision was supported by substantial evidence—we note that the Administrative Law Judge was confronted with the testimony of the compliance officer, Van Kuiken, and the testimony of Allis-Chalmer's officials Rau and Churchill. Petitioner contends, and the Administrative Law Judge found, that Van Kuiken's determination was not supported by enough knowledge of the industry practice to be persuasive. In this regard, petitioner asserts that industry practice, upon which Van Kuiken's judgment was not based, does not require scaffolding in order to perform the type of job that was being done in petitioner's tank and plate area. Further, petitioner states that the evidence demonstrates that no injury had ever occurred or resulted from the cited condition in its tank and plate shop.

Although it is apparent that the Administrative Law Judge was not impressed with the compliance officers' expertise or past experience as it related to the industry practice in constructing scaffolds, and, further, that he was more persuaded by the testimony of Rau and Churchill in this regard, it is equally clear to this Court that the Commission was not bound by these credibility determinations, as long as its findings are supported by substantial evidence. 29 U.S.C. § 660(a). The ultimate concern of the Commission herein was safety, and the test which it applied was whether a proscribed hazard or fall danger was present which required the use of scaffolding. It was the Commission's determination that the tripping hazard which existed atop the kilns amounted to a violation of the standard.[1] We conclude that the Com-

---

1. There was ample evidence upon which the Commission could have determined that an unsafe condition existed on top of the kiln. For example, testimony was elicited which indi-

mission was amply justified in this determination based on our review of the entire record in this action. Accordingly, because the Commission's decision was, in our opinion, based on substantial evidence, we decline to disturb that determination herein. *Accu-Namics, Inc. v. Occupational S. & H. Rev. Com'n,* 515 F.2d 828, 834 (5th Cir. 1975).

The decision of the Commission finds additional support in the declared purpose of the Occupational Safety and Health Act, which is "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions". 29 U.S.C. § 651(b). "The keystone of the Act in short is preventability." *Brennan v. Occupational Safety & Health Rev. Com'n,* 513 F.2d 1032, 1039 (2d Cir. 1975). Actual death or injury are certainly not a prerequisite to establish a violation. *Brennan v. Butler Lime and Cement Company,* 520 F.2d 1011, 1017 (7th Cir. 1975). "One purpose of the Act is to prevent the first accident." *Lee Way Motor Freight, Inc. v. Secretary of Labor,* 511 F.2d 864, 870 (10th Cir. 1975). Therefore, although the fact that petitioner had an accident-free or injury-free record could properly be considered in determining the gravity of the violation for which it was cited, we are not impressed with petitioner's argument that its past record is dispositive in light of the Commission's finding that there existed a genuine fall hazard, and in light of the Act's declared policy to prevent the occurrence of accidents and injury.

The order of the Occupational Safety and Health Review Commission is AFFIRMED, and the citation will be enforced.

cated that tools and equipment, as well as the accumulation of water and dust particles, were present on the cylindrical surfaces upon which the work was being done.